The STATE of Ohio, Appellee,

v.

SPINGOLA, Appellant.

[Cite as *State v. Spingola* (1999), 136 Ohio App.3d 136.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 99CA19.

Decided Dec. 22, 1999.

138

*Garry E. Hunter,* Athens Law Director, and *Lisa A. Eliason,* City Prosecutor, for appellee.

*Thomas Condit,* for appellant.

---

KLINE, Presiding Judge.

Charles S. Spingola appeals his conviction for criminal trespassing. Spingola refused to leave Ohio University ("OU") property after being asked to leave by the Ohio University Police Department ("OUPD"). He asserts that the Athens County Municipal Court should have granted his motion to dismiss, or, in the alternative, found him not guilty of criminal trespassing because he had a First Amendment privilege to preach on OU property. We disagree because Spingola had no First Amendment right to engage in public communication at the Civil War Monument ("Monument"), and, therefore, no privilege to preach at the Monument while engaged in public communication.

He also asserts that OU selectively enforces its permit requirement based upon the viewpoint of the speaker. We disagree because the record contains no evidence that OU selectively enforces its policy requiring permits based upon the speakers' viewpoints. He also asserts that OU's policy on speech is unconstitutionally vague. We disagree because the policy provides sufficient notice of its proscriptions, and contains reasonably clear guidelines to prevent arbitrariness or discrimination in its enforcement.

Accordingly, we affirm the judgment of the trial court.

## I

OU is a public university located in Athens, Ohio. The College Green ("green") is an open, square-shaped area surrounded on three sides by academic buildings. The fourth side abuts East Union Street, a public street. The Monument is located on the green near the East Union Street sidewalk. During good weather, students congregate at the Monument to study, read, sit, talk, and eat. At the intersection of East Union and Court Streets, there is a gate to OU where students and nonstudents may, after receiving a permit, pass out literature and other objects, set up a table, and engage in fundraising and other activities that do not impede the free flow of pedestrians. The gate is one of six sites that individuals may reserve for such activities by applying for and receiving a permit from OU. Several OU employees testified that OU does not permit individuals to use any other site for assemblies or speeches. OU's policy prohibits assemblies or public speaking at the Monument.

On October 29, 1998, Spingola began preaching on East Union Street, but, later, moved to the Monument area. As he continued preaching at the Monument, he engaged in heated dialogue with several students. The OUPD arrived at the Monument and asked Spingola if he had a permit. When they learned that he did not, they asked him to leave OU property. He refused to do so, and the OUPD arrested him. OUPD did not ask for permits or arrest any of the people who had gathered in response to Spingola's preaching.

Spingola filed a motion to dismiss, arguing (1) that his First Amendment right to freedom of speech includes a privilege to speak at the Monument and (2) that OUPD engaged in viewpoint discrimination by arresting him, but not the people who were arguing with him. In a post-hearing memorandum, Spingola asserted that OU's policy on the use of the green for First Amendment activities is unconstitutionally vague.

The trial court held a two-day hearing on Spingola's motion to dismiss. John Burns, the director of legal affairs for OU; Jim McManaway, an OUPD officer; Mark Matthews, the assistant director of OUPD; Tom Fitzmaurice, the operator of a sweater buggy near the Monument; Theresa Spingola, Spingola's wife; Spingola; and Timothy J. Hogan, associate director of the Baker Center at OU, all testified at the hearing.

John Burns helped to develop OU's policy regarding speech on the green. OU's handbook for student organizations ("the handbook") sets forth the policy. The policy provides that in order to use a college green site, a person must fill out a college-green-site-reservation form ("reservation form"). Burns and Hogan testified that individuals may reserve and use only the sites listed on the reservation form for assemblies and speeches. Burns testified that sites not listed on the reservation form are reserved for activities that do not involve demonstrations or an assembly. The parties stipulated that Spingola had the opportunity to reserve the sites listed in the registration form.

Burns, Fitzmaurice, and Theresa Spingola testified that the Monument area is a busy area, with many people coming and going, and that the students normally use the Monument itself for a gathering place to sit and read, eat lunch, or have conversations. The videotape admitted at the hearing supports their testimony.

Burns also testified that it is common for individuals to come to OU to preach to the students. Normally, these preachers do so from the East Union Street sidewalk and occasionally step up on the edge of the green onto a stone ledge. OU considers the ledge city property and does not attempt to have the preachers step back down onto the city sidewalk.

Burns and Matthews testified that OU regularly attempts to quiet or remove students and nonstudents who engage in loud conversations that may disturb classes.

After the trial court denied Spingola's motion to dismiss, Spingola pled no contest. The trial court found him guilty. Spingola appeals his conviction, asserting the following assignments of error for our review:

"I.   The trial court erred by denying defendant's motion to dismiss.

"II.   The trial court erred by finding appellant guilty of criminal trespass after he entered a plea of no contest."

## II

Spingola combines his assignments of error for purposes of argument because they both turn on whether Spingola had a privilege to preach on OU property. We combine our discussion of his two assignments of error for the same reason and address each of his arguments in turn.

## A.

Spingola argues that he has a right to speak at the Monument and, therefore, a privilege to stand on OU property when he is preaching there. Whether Spingola had a privilege to be on OU property rests upon whether he had a constitutional right to preach at the Monument without applying for a permit. This constitutional determination presents a mixed question of law and fact. A reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726, 727. The reviewing court must then review the trial court's application of the law to the facts *de novo. State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036.

R.C. 2911.21(A)(3) prohibits any person, without privilege to do so, from recklessly entering or remaining on the land or premises of another, when the person has been notified that his or her presence is unauthorized. The only element of R.C. 2911.21(A)(3) at issue on appeal is whether Spingola had a privilege to be on OU's property. A privilege includes a right conferred by law. R.C. 2901.01(A)(12). Spingola argues that he has a First Amendment right to speak at the Monument because it is a public forum and OU does not have a policy forbidding or regulating speech at the Monument.

The right to use public or governmental property for speech expression depends on whether the property has the status, through law or tradition, of a traditional public forum, a nontraditional public forum, or a nonpublic forum.

See *Capitol Square Review & Advisory Bd. v. Pinette* (1995), 515 U.S. 753, 115 S.Ct. 2440, 132 L.Ed.2d 650,; *Perry Edn. Assn. v. Perry Loc. Educators' Assn.* (1983), 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794. However, when First Amendment issues in an educational setting are at issue, they "must be analyzed 'in light of the special characteristics of the school environment.' " *Widmar v. Vincent* (1981), 454 U.S. 263, 268, 102 S.Ct. 269, 273, 70 L.Ed.2d 440, 446, at fn. 5, quoting *Tinker v. Des Moines Indep. Community School Dist.* (1969), 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731, 737. The First Amendment does not guarantee the right to expression at all times, all places, and all manners. *Heffron v. Internatl. Soc. for Krishna Consciousness, Inc.* (1981), 452 U.S. 640, 647, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298, 306.

While "the campus of a public university, at least for its students, possesses many of the characteristics of a public forum[, * * * a] university differs in significant respects from public forums such as streets or parks." *Widmar v. Vincent*, 454 U.S. at 267–268, 102 S.Ct. at 273, 70 L.Ed.2d at 446, fn. 5. In determining the type of forum at issue in *Widmar*, the United States Supreme Court explained that universities differ in significant respects from public forums such as streets or parks because of the special characteristics of the school environment and a university's educational mission. Because of this mission, the university may impose "reasonable regulations compatible with that mission upon the use of its campus and facilities." *Id.* A public university need not make "all its facilities equally available to students and nonstudents * * * or * * * grant free access to all of its * * * buildings." *Id.*

A traditional public forum is a place that, by long tradition or by government fiat, has been "devoted to assembly and debate." *Perry,* 460 U.S. at 45, 103 S.Ct. at 954, 74 L.Ed.2d at 804. The government may not prohibit all communicative activity in a public forum. *Id.* However, the government may enforce content-neutral time, place and manner restrictions that are narrowly tailored to serve a significant governmental interest if alternative channels of communication are left open. *Id.*

In this case, the green is not a traditional public forum. As part of a public university, it does not possess the characteristics inherent in public forums. See *Widmar.* Further, the parties presented no evidence indicating that others have traditionally used the green for public assembly and debate. Rather, at the hearing, the parties focused on current uses of the green. Accordingly, we find that the green is not a traditional public forum.

A nontraditional public forum is public property opened by the government for use by the public as a place for expressive activity. Even though the government is not required to indefinitely keep a nontraditional forum open,

when the government does open up the forum, it is bound by the same standards that apply in a traditional public forum. *Perry,* 460 U.S. at 45–46, 103 S.Ct. at 954, 74 L.Ed.2d at 804–805. The government may open up portions of a nonpublic forum and not open the remaining portions. See *Widmar,* 454 U.S. at 267, 102 S.Ct. at 273, 70 L.Ed.2d at 446, at fn. 5 ("We have not held * * * that a university must grant free access to all of its grounds or buildings"). Therefore, OU may designate portions of the green as a nontraditional public forum, but keep other areas of the green as nonpublic forums. Accordingly, OU may designate the six green sites found in the handbook as nontraditional public forums, while keeping the Monument as a nonpublic forum. Based upon OU's policy and the testimony at the hearing, we find that the Monument is a nonpublic forum.

Areas of the green that are non-public forums, such as the Monument, are governed by different standards than public forums. *Perry,* 460 U.S. at 46, 103 S.Ct. at 955, 74 L.Ed.2d at 805. OU may "reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and is not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.*

OU's policy, as articulated in the handbook and by Burns, Matthews, and Hogan, reserves the Monument space for private communication. Thus, the Monument is reserved for communication targeted at specific individuals rather than all individuals present in the Monument area. Matthews testified that, when conversations on the green get too loud, he regularly asks the people to move to the city sidewalk. This is reasonable, given OU's mission of education and the special characteristics of the school environment. Maintaining a quiet atmosphere in this academic setting serves OU's mission of education. Thus, Spingola had no First Amendment right to engage in public communication at the Monument. Accordingly, we find that Spingola had no privilege to engage in public communication at the Monument.

### B.

Spingola next contends that while OU's policy apparently is content-neutral on its face, OU discriminates based upon content in enforcing its policy. He argues that (1) the failure to remove students who gather at the Monument on a daily basis to eat, have conversations, read, and study, (2) the heavy regulation of the preachers, and (3) the failure of OUPD to remove and arrest, if necessary, the students who vocalized their disagreements with Spingola's viewpoint prove that OU is enforcing its own policy based upon the content of speech.

The failure to remove students who gather at the Monument to eat, have conversations, read, and study is consistent with OU's policy to allow private speech to occur at the Monument. Thus, it has no bearing on our determination whether OU enforces its policy based upon viewpoint or content.

The record does not support Spingola's contention that the preachers were "heavily regulated." Spingola's testimony is limited to the five or six times that he visited OU. He testified that much of the preaching on those days was done from city property, the sidewalk. Burns and Matthews testified that they regularly ask people engaged in any public speech for a permit, and, if they do not have one, they ask the people to leave OU property. State's Exhibit 2 includes approximately two hundred and fifty applications for permits to use college green sites in a one-year period. Thus, the record does not establish that OU "heavily regulates" the preachers.

The fact that Spingola was arrested but none of the students who were "mocking and heckling" him were does not indicate viewpoint discrimination. Spingola testified that the "champion of the hecklers" left before the police arrived. Thus, she was not available for arrest at the time OUPD arrested Spingola. Many nonviewpoint discriminatory reasons exist for the police officers not to ask the students to leave. For example, OUPD may have thought that if they made Spingola leave or move off of OU property, the students would naturally disperse, or follow him off of the property. Or they may have asked Spingola to move first with the intention of also asking the other students to leave, but become occupied with Spingola because he refused to leave. Furthermore, the evidence at the hearing did not establish whether the students were engaged in public or private communication. If the students were speaking directly to Spingola in a conversational tone, the police may have viewed their communication as private communication, and thus a permitted use of the Monument area. We will not attribute the most sinister reason to OUPD for not arresting any of the people gathered in response to Spingola's preaching, especially when no direct evidence of OUPD's reasons was presented at the hearing.

We find that OU did not discriminate based upon the speaker's viewpoint in applying its policy.

### C.

Spingola next argues that OU's policy is unconstitutionally vague. "[W]hen a statute is challenged under the due process doctrine of vagueness, a court must determine whether the enactment (1) provides sufficient notice of its proscriptions and (2) contains reasonably clear guidelines to prevent official

arbitrariness or discrimination in its enforcement." *Perez v. Cleveland* (1997), 78 Ohio St.3d 376, 378, 678 N.E.2d 537, 540, citing *Smith v. Goguen* (1974), 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605.

The reservation form states that "[p]olicies relative to the use of these sites are available from Baker Center Reservations Office * * * and are described in the student organizational handbook, How To at OU, which is available from the Office of Student Activities." The handbook provides that "certain events, activities, and programs" require the registration and approval of OU offices before they occur. The handbook then lists the activities and then provides that activities not listed "may be planned and implemented without any explicit permission." The list does not specifically include preaching, but does include "[f]acilities (use of outdoor or indoor campus space)" and "[m]arches, rallies or demonstrations (on campus)." The handbook then refers the user who wants to use a "facility" to the section entitled "Using Campus Facilities." This section is divided into the campus gate area and the college green subsections. The college green subsection provides: "To use any College Green site, you must fill out a 'College Green Site Reservation' form * * *. Besides the Campus Gate, you can utilize Howard Hall Site, Wilhelm Amphitheater, West Portico * * *, and on a limited basis, Wolfe Garden."

Taking the policy as a whole, it is clear that OU differentiates between the green sites listed and those that are not listed. That is, the listed "events, activities, and programs" must take place at one of the six sites on the green. The types of activities allowed and regulated at each site constitute public speaking.

OU's policy is not unconstitutionally vague. Reading the policy as a whole, it is clear that a person may use only the six sites listed on the form for public communication and the remainder of the green for private communication. The policy provides sufficient notice of its proscriptions, and contains reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement. We find that the policy is not unconstitutionally vague.

### III

Having rejected all of Spingola's argument's, we overrule both of his assignments of error. Accordingly, we affirm the judgment of the trial court.

*Judgment affirmed.*

PETER B. ABELE, J., concurs.

EVANS, J., concurs in judgment only.