[Cite as *State v. Kalman*, 2017-Ohio-7548.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

STATE OF OHIO,                                    :

      Plaintiff-Appellee,                   :        Case No. 16CA9

v.                                               :

                                                :        DECISION AND
ELIOT KALMAN,                                    :        JUDGMENT ENTRY

      Defendant-Appellant.                  :        RELEASED 09/01/2017

_____

APPEARANCES:

Timothy Young, Ohio Public Defender, and Nikki Trautman Baszynski, Assistant Ohio Public Defender, Columbus, Ohio, for defendant-appellant.

Lisa A. Eliason, Athens City Law Director, and Tracy Meek, Athens City Prosecutor, Athens, Ohio, for plaintiff-appellee.

_____

Hoover, J.

{¶1} Defendant-appellant, Eliot Kalman ("Kalman"), was convicted of one count of criminal trespass following a bench trial in the Athens County Municipal Court. The criminal trespass charge arose from allegations that Kalman had entered a restricted area on the grounds of the Athens County Courthouse; and that he had entered the Athens County Courthouse and surrounding premises after having twice been given notice that he was banned from the courthouse and the courthouse premises. On appeal, Kalman first contends that the trial court erred in denying his motion to dismiss. In his motion to dismiss, Kalman alleged that he had a First Amendment privilege to be within the restricted area. In addition, Kalman argues in his second contention on appeal that the orders barring him from the courthouse property were

unconstitutional and thus could not be relied upon to support the trial court's guilty verdict. For the following reasons, we affirm the judgment of the trial court.

## I. Facts and Procedural History

### A. Background History

{¶2}   For an unknown number of years a large box with placards containing the names of local churches was affixed to the outside of the Athens County Courthouse. Above the box was a label that read: "Church Directory." Only recently has the label been changed to read: "Directory." The parties dispute whether the box currently contains only the names of local churches, or whether it contains other addresses and information as well. Kalman, and apparently other individuals, have taken issue with the directory, claiming that religious signage on a public building violates the First Amendment's Establishment Clause.

{¶3}   Kalman has conveyed his concerns regarding the signage to his local government for a number of years. The record indicates that Kalman has written letters, emails, and requested meetings with local officials to discuss the directory. Eventually, Kalman began placing stickers on the directory conveying his belief that its presence was unconstitutional.

{¶4}   On October 28, 2014, Kalman received a "Trespass Complaint Form" from the Athens County Sheriff's Office informing him that he was no longer permitted to return to 1 South Court Street, Athens, Ohio, the site of the Athens County Courthouse and attached directory. This act only seemed to increase Kalman's efforts to have the directory removed. Specifically, Kalman began to place new stickers on the directory that featured just one word: "UNCONSTITUTIONAL." Kalman also wrote letters to the Athens County Commissioners in the summer of 2015, stating that he would continue to object to the placement of the directory.

{¶5}    Sometime in the fall of 2015, metal chains were installed around the stairs and ramp that surround the directory. Signs were also placed on the chains noting that only authorized personnel was permitted beyond the chains.

### B. The Events of October 29, 2015

{¶6}    On October 29, 2015, Kalman entered the courthouse, approached the security officers, and told them that he was going to put stickers on the directory. Constable Ronald Hawk told him that he could be charged with a crime for doing that. Kalman indicated that he understood the warning.

{¶7}    Kalman then left the inside of the courthouse and went directly to the newly installed chains hanging before the stairs and ramp that surround the directory. Kalman then stepped over the chain and began to place stickers on the directory. The Constables then served Kalman with another "Trespass Complaint Form" as he was sitting on a bench outside of the courthouse. Constable Hawk then told Kalman that only authorized personnel were permitted to cross the chain. Kalman replied that he was authorized by the Constitution of the United States.

{¶8}    Following their discussion, Constable Hawk went back inside the courthouse and monitored the security video of the courthouse perimeter. Approximately five minutes later he saw Kalman return to the chain and cross over it again. This time Kalman placed a stepstool on the ramp below the directory. He then used the stepstool to place another sticker on the directory.

{¶9}    Kalman was then served with a criminal complaint charging him with criminal trespass, a fourth degree misdemeanor in violation of R.C. 2911.21(A).

### C. Litigating the First Amendment Issue

### 1. Pretrial Motions

{¶10}  In March 2016, as the scheduled trial date neared, the State filed a motion in limine. The motion in limine sought to preclude Kalman from submitting any evidence regarding the constitutionality of the directory and "any assertion that Defendant's First Amendment right permits or grants a privilege permitting him to engage in criminal trespass." Specifically, the State sought to exclude the following: eight photographs of the directory from 2014; a July 29, 2015 letter to the county commissioners regarding the constitutionality of the directory; an August 3, 2015 letter to the county commissioners regarding the directory; thirteen photographs of the directory from June 2015 to October 2015; a written statement from Kalman; and a DVD compilation of Kalman's "protest recordings."

{¶11}  Two days after the motion in limine was submitted, the trial court granted the motion in its entirety. The trial court stated that the evidence was not relevant to the criminal trespass charge. Further, the trial court found that the issue of privilege is a "legal issue and is properly presented in a motion to suppress or a motion to dismiss" and not for a jury to decide.[1]

{¶12}  In response, Kalman filed a motion to dismiss, arguing that he had a privilege to be on the ramp and the stairs immediately below the directory because the area was a public forum open to free expression of speech. The State filed a response, arguing that Kalman trespassed by crossing the chains marked "Authorized Personnel Only" and by being on courthouse property after being served with two Trespass Complaint Forms that barred him from being on the courthouse property. The State also argued that the area did not constitute a public

---

[1] We note that Crim.R. 12(C) permits a court to consider a defense and evidentiary issues when ruling on a pretrial motion to dismiss *only if the matter is capable of determination without trial of the general issue*. (Emphasis added.) *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 3. Here, we disagree with the trial court's assessment that evidence pertaining to the restricted area was not relevant to the criminal trespass statute. Rather, whether the restricted area is a forum open for public debate goes to the essential element of whether Kalman was privileged to be within the restricted area. Thus, this writing judge does not believe that it was best practice to consider the issue in a pretrial motion to dismiss because determination of the motion requires consideration of the general issue for trial. Nonetheless, because the trial court directed Kalman to present and argue the issue in this manner, we will review his assignments of error.

forum, but that if it constituted a designated public forum, the restriction was a content-neutral regulation of time, place, and manner of expression.

## 2. The Motion to Dismiss Hearing

{¶13} The only person to testify at the motion to dismiss hearing was Athens County Commissioner Charlie Adkins.[2] Adkins described the restricted area along the right side of the courthouse as a ramp and steps that lead to a door that leads into the Athens County Prosecutor's Office.[3] Adkins indicated that the ramp and steps are approximately four feet wide. He further testified that the landing area at the top of the steps and ramp is approximately four feet by five feet in area, and the ramp is approximately eight to ten feet long. The restricted area also contains the directory prominently displayed on the exterior of the courthouse and directly next to the door. Adkins explained that a chain is affixed across the entrance of the ramp to block access to the restricted area via the ramp. He further explained that a second chain is affixed to block access to the restricted area via the steps. Attached to each chain is a sign that states "Authorized Personnel Only". Adkins described the area surrounding the restricted area as a "a brick and concrete area" approximately forty feet by sixty feet in area, also referred to as the "courtyard." A sidewalk along Court Street, and a sidewalk along Washington Street also surround the courthouse premises.

---

[2] In addition to the testimony, the trial court also accepted the State's exhibits into evidence. The exhibits consisted of the agreement between the county and the Athens Christian Education Association regarding control and maintenance of the directory, and photographs of the restricted area.

[3] Adkins further explained that the steps and ramp formerly led to a restroom, but that at the time of the events at issue the entrance led to the Athens County Prosecutor's Office.



(These photographs were admitted as exhibits in the proceedings below, and depict the restricted area and directory.)

{¶14}  Adkins described the space around the restricted area, aka the courtyard, as an area that has a history of protest and first amendment expression. In fact he testified that protests and demonstrations occur in the courtyard "[a]bout every day." He indicated that the courtyard extends to within four feet of the directory. Adkins stated that neither the commissioners, constables, nor law enforcement would stop demonstrations in the courtyard as long as they were non-violent and did not block access to the main entrance of the courthouse. Conversely, Adkins testified that he was not aware of any individuals or groups who have assembled to protest or exercise their first amendment rights in the restricted area other then individuals who have vandalized the directory.

{¶15}  Adkins explained that the only individuals allowed in the restricted area were those people with "authorization" or "the maintenance department." He stated that the door within the restricted area is locked and is no longer a public entry into the courthouse. He noted that courthouse security is located at the main entrance, but that there is no security measures in place to check individuals gaining access via the restricted area doorway. Accordingly, Adkins contends that entrance through the restricted area would present a safety risk to those within the courthouse, and that the county has an interest in deterring the public from attempting to gain entry through the door. He further explained that the chains and signs were also installed to prevent repeated acts of criminal mischief and criminal damage to the directory[4], and because the commissioners had liability concerns after seeing someone use a ladder to reach the directory. Adkins indicated that the county did not control or maintain the directory; noting that the control and maintenance of the directory had been transferred to the Athens Christian Education Association via written agreement. Adkins confirmed that the contract to control and maintain the directory was not open for bids, and that Kalman had requested to maintain the directory but was not provided the opportunity. Adkins denied that the restricted area was created directly because of Kalman's actions.

{¶16}  At the conclusion of the hearing the State argued that the restricted area at issue was not a public forum, that the government had four legitimate interests in restricting the area, and that even if the court found the area to be a designated public forum, the restriction was a content-neutral regulation of time, place, or manner. Meanwhile, Kalman's defense counsel argued that the criminal trespass statute only prohibits conduct that individuals engage in without privilege; and that Kalman had privilege to be on the courthouse property because the restricted

---

[4] Adkins noted that individuals placed stickers on the plexiglass covering of the directory with such regularity that the plexiglass had to be replaced.

area was a public forum open to free speech. Thus, defense counsel argued that because the area

was a public forum, the government had to demonstrate a "significant interest" in order to restrict

the area. Defense counsel concluded that the government's interests were not significant, but

were merely offered to disguise its actual objective, which was to prevent Kalman from voicing

his displeasure with what he perceived to be a constitutional violation.

### 3. The Trial Court's Decision on the Motion to Dismiss

{¶17}  At the conclusion of the motion to dismiss hearing, the trial court issued oral

findings. The trial court found that the restricted area was not a public forum, that there were

alternative means of communication available, that the restriction was narrowly tailored, and that

there was a significant and appropriate government interest. Specifically, the trial court found the

safety and liability concerns to be of significant interest to the county. It also found that

preventing defacement of property is a legitimate government interest.

{¶18}  The trial court later issued a written decision on the motion to dismiss, which

added that the restriction was content-neutral.

### D. Trial and Sentencing

{¶19}  Following the denial of the motion to dismiss and the granting of the State's

motion in limine, Kalman decided to move forward with a bench trial. On the day of the bench

trial Kalman proffered his First Amendment arguments via written filing, thus preserving those

issues for appeal.

{¶20}  Ultimately, the trial court found Kalman guilty of criminal trespass. He was

sentenced to 30 days of jail; all of it was suspended in lieu of two years of community control.

The trial court also imposed a $250 fine, of which $200 was suspended.

{¶21} Kalman filed a timely notice of appeal, as well as a motion to stay sentence. The trial court ordered a stay of the sentence pending the outcome of this appeal.

## II. Assignments of Error

{¶22} Kalman assigns the following errors for our review:

Assignment of Error I:

> The trial court erred when it denied Mr. Kalman's motion to dismiss. First and Fourteenth Amendments to the U.S. Constitution; Ohio Constitution, Article I, Sections 11; *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); Motion to Dismiss: Decision and Journal Entry, Apr. 20, 2016; Motion Hr'g Tr. 8, 13, 28, 41-46, 47-48, 55, 62, 70, 72; Motion H'rg Exhibits A and F.

Assignment of Error II:

> The trial court erred when it relied upon the unenforceable trespass-complaint forms in order to find Mr. Kalman guilty of criminal trespass. First and Fourteenth Amendments to the U.S. Constitution; Ohio Constitution, Article I, Sections 11 and 16; R.C. 2911.21; State's Response to Defendant's Motion to Dismiss; Motion Hr'g Tr. 52-53; Trial Tr. 10-12, 13, 35-37, 110; Exs. A and F.

## III. Law and Analysis

### A. First Assignment of Error

{¶23} In his first assignment of error, Kalman contends that the trial court erred by overruling his motion to dismiss. Kalman contends that, under the facts of this case, the enforcement of the criminal trespass statute violated his right to free speech under the United States and Ohio Constitutions. Specifically, Kalman contends that: (1) the restricted area is a public forum, (2) the restricted area was created in direct response to his protests of the directory, i.e. was content or viewpoint based, (3) the government's cordoning off of the restricted area

must be analyzed under strict scrutiny, (4) the restriction does not serve a compelling interest and is not narrowly tailored, (5) he therefore had a privilege[5] to be in the restricted area to express his freedom of speech, and (6) his being in the restricted area cannot constitute criminal trespass.

{¶24}   The State argues that the restricted area is a nonpublic forum and, as such, the reasonable, viewpoint-neutral restriction did not violate the First Amendment. Alternatively, even if a higher level of scrutiny applies, the State argues that the cordoning off of the restricted area is a content neutral time, place, or manner restriction, narrowly tailored to serve significant government interests, leaving open ample alternative channels of communication. Thus, under either analysis, the State contends that Kalman did not have a "privilege" to be within the restricted area under the First Amendment.

### 1. Motion to Dismiss Standard of Review

{¶25}   Appellate review of a trial court's decision on a motion to dismiss involving a constitutional determination involves a mixed question of law and fact. *State v. Spingola*, 136 Ohio App.3d 136, 142, 736 N.E.2d 48 (4th Dist.). We will defer to a trial court's factual findings if some competent and credible evidence supports them, but we independently review whether the trial court properly applied the law to the facts. *Id.*

### 2. First Amendment Analysis

{¶26}   The First Amendment guarantees both the freedom of speech and the freedom of assembly. *See* U.S. Constitution, First Amendment. Courts "evaluate free speech and free

---

[5] Whether Kalman had a privilege to be within the restricted area is relevant to this case because the criminal trespass statute, R.C. 2911.21, prohibits offenders from being in certain places "without privilege to do so." In fact, the essential element at issue in the first assignment of error is whether Kalman had a privilege to be in the restricted area. A privilege includes a right conferred by law. R.C. 2901.01(A)(12).

assembly claims under the same analysis." *Stagman v. Ryan*, 176 F.3d 986, 999 (7th Cir.1999), fn. 3.

{¶27}  To demonstrate a violation of his First Amendment rights, Kalman must first establish that the First Amendment protects his activities. *Cornelius v. NAACP Legal Defense & Edn. Fund, Inc.*, 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). If his activities are so protected, we must then determine whether the challenged restrictions impact a public or nonpublic forum. This determination is critical because it dictates the extent to which the government can restrict First Amendment activities within the forum. *Id*.; *see also Spingola* at 142 ("The right to use public or government property for speech expression depends on whether the property has the status, through law or tradition, of a traditional public forum, a nontraditional public forum, or a nonpublic forum.") Finally, we must determine whether the State's proffered justifications for prohibiting speech in the forum satisfy the requisite standard of review. *Cornelius* at 797.

### a. The First Amendment Protects Kalman's Activities

{¶28}  Kalman alleges that the cordoning off of the restricted area interferes with his ability to protest and demonstrate against the placement of the directory on the county courthouse.

{¶29}  The "freedom to discuss public affairs and public officials is unquestionably * * * the kind of speech the First Amendment was primarily designed to keep within the area of free discussion." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 296-297, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (Black, J., concurring). Thus, to the extent that Kalman was engaged in speech aimed at the government and his belief that the directory violated the Establishment Clause, the First Amendment protects his activities.

## b. Public v. Nonpublic Forum

{¶30}  Before determining whether the restricted area constitutes a public or nonpublic forum, we find it necessary to discuss the differences between the forum statuses.

{¶31}  "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius*, 473 U.S. at 799-800, 105 S.Ct. 3439. Nonetheless, the public may acquire by tradition or prior permission the right to use government property for expressive purposes. *Id*. at 802. Thus, to determine when and to what extent the Government may limit expressive activity on its property, the Supreme Court has adopted a range of constitutional protections that varies depending on the nature of the government property, or forum. *Id*. at 800.

{¶32}  The three types of forums identified by the Court are: the traditional public forum; the designated public forum; and the nonpublic forum. *Id*. at 802. Traditional public forums are places that by long tradition have been open to public assembly and debate. *Id*.; *Perry Edn. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) ("At one end of the spectrum are streets and parks which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.") (Internal quotations omitted.) In traditional public forums, the government's right to "limit expressive activity [is] sharply circumscribed." *Perry* at 45. A designated public forum is public property, not constituting a traditional public forum, which the government has intentionally opened to the public for expressive activity. *Id*. "They may be opened generally for all expressive activity. Or, they may be designated for more limited purposes such as use by certain groups, or discussion of certain

subjects." *Air Line Pilots Assn., Internatl. v. Dept. of Aviation of City of Chicago*, 45 F.3d 1144, 1151 (7th Cir.1995) (Internal citations omitted). While the government is not required to retain the open nature of property indefinitely, "as long as it does so it is bound by the same standards as apply in a traditional public forum." *Perry* at 46. If the property is not a traditional public forum or a designated public forum, it is a nonpublic forum. Access to a nonpublic forum can be restricted as long as the restrictions on speech are "reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.*

### c. The Restricted Area is a Designated Public Forum

{¶33}  Here the trial court determined that the restricted area was a nonpublic forum. For the reasons that follow, we disagree.

{¶34}  Commissioner Adkins testified that the restricted area is not an area that has traditionally been open to the public for expressive activity. Thus, it is not a traditional public forum. However, although the restricted area is not a traditional public forum, it has been opened by the government as a place for public expression. Commissioner Adkins testified that the directory has been placed on the exterior of the courthouse, within the restricted area, for as long as he can remember. The directory is purportedly open for various organizations to use. In order to access the directory one must use the steps or ramp. Commissioner Adkins testified that while the directory is controlled and maintained by the Athens Christian Education Association, it is owned by the county. Therefore, we determine that the government has intentionally opened the restricted area to the public for expressive activity and the area is a designated public forum.

### d. The Restrictions are Content-Neutral and Intermediate Scrutiny Applies

{¶35} Government restrictions on speech in a designated public forum are subject to the same scrutiny as restrictions in a traditional public forum. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009). In a public forum, the government cannot ban all expressive activity. *Perry*, 460 U.S. at 45, 103 S.Ct. 948. However, even in a public forum, the government can restrict speech through "content-neutral time, place, and manner restrictions that: (a) serve a significant government interest; (b) are narrowly tailored to advance that interest; and (c) leave open ample alternative channels of communication." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1130-31 (10th Cir.2012). Content-based restrictions, however, "must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest." *Summum* at 469. In the case sub judice, the State claims that the county created the restricted area as a content-neutral time, place, and manner restriction, and that the restriction satisfies the intermediate scrutiny analysis described above. Kalman, on the other hand, argues that the restricted area was created in direct response to his protests and demonstrations against the directory, and thus is content-based or viewpoint discrimination subject to strict scrutiny analysis.

{¶36} The trial court found that the cordoning off of the restricted area constituted a content-neutral restriction and thus applied intermediate scrutiny.[6] We agree with this determination. Commissioner Adkins specifically testified that the cordoning off of the restricted area was not in direct response to Kalman's activities, and also advanced several other reasons why the area was restricted. Kalman, conversely, did not advance any evidence to support his contention that the restriction was content or viewpoint based, and rather relies on mere

---

[6] It is not entirely clear why the trial court engaged in this analysis when it also determined the area to be a nonpublic forum. As noted above, the government has broad discretion to restrict expressive activity in a nonpublic forum, and the court need not conduct a narrowly tailored analysis. Rather, "restrictions on speech [in a nonpublic forum] need only be reasonable and may not discriminate on the basis of viewpoint." *Air Line Pilots Assn., Internatl.*, 45 F.3d at 1151.

supposition and conjecture. Because the restriction was not aimed at a single person and is applicable to everyone without regard to the content of their messages, we determine it to be content-neutral.

**e. The Restriction Satisfies Intermediate Scrutiny and Kalman Did Not Have a Privilege to be Within the Restricted Area**

{¶37}   Here, the government asserted four interests in support of its cordoning off of the restricted area: public safety concerns, liability concerns, concerns regarding attempted unauthorized access into the courthouse, and to prevent damage and defacement of county property. We agree that these interests are significant.

{¶38}   Certainly the safety and security of the individuals visiting and working in the courthouse is of significant concern to county officials. Commissioner Adkins specifically testified that he has witnessed individuals place a stool or ladder on the uneven pavement of the ramp to reach the directory within the restricted area. He also testified that he did not believe the ramp was ADA compliant, and that individuals working in the prosecutor's office were frightened when individuals tried to gain entrance through the door. Thus, it appears the county had valid concerns regarding the safety and security of the restricted area, as well as an interest in preventing the unauthorized attempted access into the courthouse.

{¶39}   Furthermore, insulating the county from potential liability and safeguarding its property is also of significant interest to the county. The county, like most in this region and this State, simply cannot afford the costs associated with injury to persons or property. Evidence was presented that the county has already spent money to replace a plexiglass covering of the directory, and to pay labor costs associated with remediation of damage to the directory.

{¶40} Next, we must determine whether the restriction was narrowly tailored to advance the significant interests of the government. For the purposes of a content-neutral regulation, "the requirement of narrow tailoring is satisfied so long as the * * * regulation promotes a substantial government interest that would be achieved less effectively absent the regulation" and does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 799, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (Internal quotations and citations omitted.) Here, the restricted area is relatively small in comparison to the surrounding courtyard and sidewalks that surround the courthouse. This is not a scenario where the government has categorically banned all First Amendment activity within the entirety of the courthouse curtilage. In other words, effective demonstration of the directory can occur immediately outside of the restricted area, a mere four feet from the directory, and the restricted area does not significantly burden Kalman's speech activities or the speech activities of others. Thus, it is narrowly tailored.

{¶41} Finally, there are ample alternative channels for communication. According to Commissioner Adkins, the only individual to testify at the motion to dismiss hearing, any individual can stand immediately outside of the restricted area, in the courtyard, and exercise their right to free speech. The courtyard has a history of being a free speech zone, and Commissioner Adkins testified that free speech is not stifled in that area so long as it is peaceful and does not block access to the main entrance. If an individual wished to protest the directory specifically, we again note that this can be done in the courtyard a mere four feet from the directory.

{¶42} Kalman alleges that he personally cannot demonstrate in the courtyard because he was been served two Trespass Complaint Forms barring him from the county courthouse and its

premises. While the forms do bar Kalman from the county owned property, they do not bar him from the city owned sidewalks that also border the courthouse. Thus, Kalman can still demonstrate and protest the directory from the city sidewalks. Furthermore, if Kalman or any other person wishes to have information included in the directory, the county has established a manner in which this can be accomplished.

{¶43} In sum, the creation of the restricted area did not violate Kalman's First Amendment rights because the restriction was content-neutral, narrowly tailored to ensure significant government interests, and left open ample alternatives for Kalman to communicate his message. Therefore, Kalman was not "privileged" to enter the restricted area, and the trial court did not err in denying his motion to dismiss. Kalman's first assignment of error is overruled.

### B. Second Assignment of Error

{¶44} In his second assignment of error, Kalman contends that the Trespass Complaint Forms barring him from the courthouse property are unconstitutional and thus could not be relied upon to support the trial court's guilty verdict.

{¶45} Kalman was charged with one count of criminal trespass under R.C. 2911.21(A), which states:

No person, without privilege to do so, shall do any of the following:

(1) Knowingly enter or remain on the land or premises of another;

(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is

reckless in that regard;

(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;

(4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either.

{¶46}   Thus, because it is undisputed that Kalman entered the clearly marked restricted area, and because we determined he did so without privilege, sufficient evidence exists to support the trial court's verdict regardless of the constitutionality of the Trespass Complaint Forms. Consequently, the second assignment of error is moot and we decline to address it. *See* App.R. 12(A)(1)(c).[7]

## IV. Conclusion

{¶47}   Based on the foregoing, we conclude that the trial court did not err in denying Kalman's motion to dismiss or in convicting Kalman of criminal trespass following the bench trial. Having overruled Kalman's first assignment of error and rendering moot his remaining assignment of error, we affirm the judgment of the trial court.

---

[7] While we decline to address the merits of Kalman's second assignment of error, we note that there exists authority supporting his argument; at least facially. *See Huminski v. Corsones*, 396 F.3d 53 (2d Cir.2004) (trespass notices issued to protestor barring protestor from appearing in or around state court facilities or grounds were an unreasonable restriction on protestor's expressive activity under First Amendment). Nonetheless, we refrain from determining whether the *Huminski* ruling would apply under the facts of the instant case.

JUDGMENT AFFIRMED.

Harsha, J. concurring:

{¶48}   It is doubtful that Kalman's pretrial motion to dismiss was the proper procedural mechanism to decide the issue of privilege. Crim. R. 12(C) provides for filing a motion to dismiss only where it addresses a defense or issue that is "capable of detetermination without a trial of the general issue. " Here, the issue of whether Kalman had a privilege, constitutional or otherwise, to be at the specific location was central to deciding the ultimate issue of criminal trespass. In essence, Kalman's pretrial motion to dismiss was a motion for summary judgment, which the criminal rules do not authorize. *See Katz & Giannelli*, Baldwin's Ohio Practice, Criminal Law (3rd ed.), § 47:4.

{¶49}   Kalman had two choices to put the issue of privilege before the court: 1) go to trial and make a Crim. R. 29 Motion for Judgment of Acquittal or 2) enter into a stipulation of facts and submit the case to the court on written memoranda. *See State v. Bennett*, 2nd Dist., 2013-Ohio-4610, Froelich, J. concurring.

{¶50}   However, in the absence of an objection at trial by the state, I see no error on our part in considering the privilege issue in its current context.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs with Concurring Opinion.

For the Court

By: _____
Marie Hoover, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**